UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TOMMY PICHARDO,

                        **Plaintiff,**                  **REPORT AND**
                                                          **RECOMMENDATION**

        **-against-**                       **17-CV-3196 (DLI)**

HOYT TRANSPORTATION CORP. et al.,

                         **Defendants.**
----------------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Tommy Pichardo ("plaintiff") brings this action for overtime payments owing pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207(a)(1), and the New York Labor Law (the "NYLL"), N.Y. Comp. Codes R. & Regs. tit 12, § 142-2.2, for unpaid spread-of hours pay under the NYLL, id. § 142-2.4, as well as civil damages for recordkeeping violations pursuant to the New York Wage Theft Prevention Act (the "WTPA"), N.Y. Lab. Law § 195 (McKinney 2014). See Complaint ("Compl.") (June 1, 2015) ¶¶ 1-4, Electronic Case Filing ("ECF") Document Entry ("DE") #1. On May 26, 2017, plaintiff filed this suit against Hoyt Transportation Corporation ("Hoyt"), Joseph Termini, Sr., Chris J. Termini, Joseph Termini, Jr., Janet Termini, and John Doe (together, "defendants"). See id. at 1. In lieu of filing an answer, defendants moved under Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure to dismiss or, in the alternative, for summary judgment with respect to plaintiff's overtime claims. See Motion to Dismiss, Motion for Summary Judgment (Aug. 18, 2017), DE #14; see also Memorandum in Support (Aug. 18,

2017) ("Def. Mem.") at 9-14, DE #14-1.  Defendants also moved to dismiss plaintiff's NYLL spread-of-hours and WTPA recordkeeping claims under Rules 12(b)(6) and 12(b)(1), respectively.  See Def. Mem. at 14-15.  In his opposing papers, plaintiff sought leave of the Court to amend the complaint pursuant to Rule 15(a)(2).  See Memorandum in Opposition (Sept. 7, 2017) ("Pl. Opp.") at 10 n.4, DE #18.  On October 16, 2017, the Honorable Dora L. Irizarry referred these motions to the undersigned magistrate judge for a report and recommendation.  See Order Referring Motion (Oct. 16, 2017).

For the reasons set forth below, this Court respectfully recommends that defendants' motions be granted in limited part only and otherwise denied, and that plaintiff's motion to amend be denied.  Specifically, this Court recommends that only plaintiff's NYLL spread-of-hours claim be dismissed, leaving intact plaintiff's federal and state overtime claims, along with his WTPA recordkeeping claim.  Further, this Court recommends that plaintiff's motion for leave to amend be denied without prejudice for failing to comply with Chief Judge Irizarry's Individual Rules.

## THE UNDERLYING FACTS

Plaintiff has worked for defendants as a school bus driver since October 8, 2016.  See Compl. ¶¶ 19-20.  Plaintiff's job duties include transporting children to and from their homes and schools.  See id. ¶ 32.  Plaintiff also performs related tasks, such as pre- and post-trip inspections of the bus that he drives.  See id.  Plaintiff works five days per week, see id. ¶ 31, at a rate of $17.67 per hour, see id. ¶ 33.  Plaintiff works a split shift: he begins his workday at 5:00 a.m. at defendants' bus lot in the Bronx, concludes his first shift at 9:40 a.m.,

commences his second (and final) shift at 2:30 p.m., and ends his workday at 7:00 p.m. or 7:30 p.m. at defendants' bus lot.  See id. ¶ 32.

Per the above schedule, plaintiff alleges that he works approximately 48 hours per week, see id. ¶¶ 32-33, of which he is not compensated for 11 hours and 40 minutes, see id. ¶ 32.  This uncompensated time is comprised of both travel time and wait time.  See id.  Specifically, with respect to the travel time, plaintiff alleges that, at the conclusion of his first shift, after plaintiff drops off the last round of children at school at 9:00 a.m., plaintiff travels for 40 minutes in defendants' school bus to his home in the Bronx, where plaintiff parks the bus during his split-shift's downtime.[1]  See id. ¶¶ 7, 32.  At the commencement of plaintiff's second shift at 2:30 p.m., he travels in the school bus for 40 minutes[2] from his home back to school to pick up his second shift's first round of children.  See id. ¶ 32.  Plaintiff alleges that defendants have only occasionally compensated him for this travel time, which amounts to 6 hours and 40 minutes of purported work per week.  See id.

With respect to the wait time, plaintiff alleges that during his second shift, after plaintiff drops off the first round of children at their homes, plaintiff waits for one hour (from 4:45 p.m. until 5:45 p.m.) for a second round of children to be released from Project Read, an

---

[1] Although not expressly stated as such in the complaint, the reasonable inference is that plaintiff parks the bus at his home, see Compl. ¶ 32, which both parties acknowledge in their motion papers, see Def. Mem. at 12 n.8; Reply in Support (Sept. 22, 2017) ("Def. Reply") at 5 n.2, DE #21; Pl. Opp. at 22-23.

[2] The complaint does not expressly state that it takes plaintiff 40 minutes to travel from his home to school.  See Compl. ¶ 32.  The reasonable inference, however, is that, because it takes plaintiff 40 minutes to travel from school to his home, see id., it likewise takes him about 40 minutes to travel from his home to school, which defendants do not now dispute, see Def. Mem. at 4.

afterschool program.  See id.  Plaintiff claims that he has never been compensated for this

afternoon wait time, which amounts to 5 hours of purported work per week.  See id.[3]

## DISCUSSION

Defendants advance various challenges to each of plaintiff's claims.  See Def. Mem.

at 9-14.  Defendants argue that plaintiff fails to state an overtime claim for which relief may be

granted because plaintiff's claim is based on activities—traveling and waiting—that are not

compensable work, see id. at 10-14, and, in any event, the uncontroverted facts of the case (as

reflected in plaintiff's trip card records) indicate that defendants will prevail at trial, see id.

at 14.  Further, defendants contend that the NYLL spread-of-hours claim is inapplicable to the

facts at hand because plaintiff earns above minimum wage.  See id. at 14.  Finally, defendants

argue that, if the sole federal claim (the FLSA overtime claim) is dismissed, the Court should

decline to exercise supplemental jurisdiction over the WTPA state law recordkeeping claims.

See id. at 14-15.  This Court discusses each claim—the overtime, spread-of-hours, and

recordkeeping claims—in turn, as well as plaintiff's motion for leave to amend the complaint,

which he raises in a footnote in his opposition papers.  See Pl. Opp. at 10 n.4.  This Court

recommends that the District Court grant defendants' motion to dismiss without prejudice as to

plaintiff's NYLL spread-of-hours claim; deny defendants' motions to dismiss plaintiff's

overtime and WTPA recordkeeping claims, and deny without prejudice defendants' summary

---

[3] In response to defendants' motion for summary judgment, plaintiff has filed a statement in which he alleges, under penalty of perjury, that he was "expressly instructed to proceed directly to Project Read [after completing the home drop-offs in connection with his first afternoon run,] and wait for the [Project Read] students to be dismissed."  Declaration in Opposition (Sept. 7, 2017) ("Pl. Decl.") ¶¶ 16, 29, DE #19.

judgment motion as to those claims, as well as plaintiff's motion for leave to amend the complaint.

## I.    Plaintiff's Overtime Claims are Well Pled and Summary Judgment is Premature

### A. <u>Motion to Dismiss</u>

Defendants argue that plaintiff's overtime claims are deficient in two respects.  First, according to defendants, plaintiff's complaint fails to adequately plead any overtime claim because the pleading relies on travel and wait time—activities that are, as a matter of law, facially not compensable.  <u>See</u> Def. Mem. at 10-14.  Defendants analogize plaintiff's mid-shift travel time to commute time, which is not compensable under the FLSA as per the Portal-to-Portal Act (the "PPA"), 29 U.S.C. § 251 *et seq*.  <u>See</u> Def. Mem. at 10.[4]  Defendants also argue that plaintiff's afternoon wait time did nothing to benefit defendants.  <u>See</u> <u>id.</u> at 12.  Defendants posit that if this time is deducted from plaintiff's alleged 48-hour workweek, plaintiff pleads only 36 hours and 20 minutes of actual work, which is below the 40-hour threshold for overtime pay.  <u>See</u> <u>id.</u> at 13.  Plaintiff counters that the Court should assume as true that all of his alleged work is compensable.  <u>See</u> Pl. Opp. at 7-9.

Second, defendants assail plaintiff's complaint for describing his schedule for a "typical" workweek and thus failing to adequately plead an overtime claim.  <u>See</u> Def. Mem. at 9-10.  Defendants argue that case law in the Eastern District of New York, relying on Second Circuit jurisprudence, has condemned the use of this pleading practice.  <u>See</u> <u>id.</u>

---

[4] The NYLL "mandates overtime pay and applies the same exemptions as the FLSA."  <u>Reiseck v. Universal Commc'ns of Miami, Inc.</u>, 591 F. 3d 101, 105 (2d Cir. 2010) (citing 12 NYCRR § 142-3.2); <u>accord</u> <u>Kuebel v. Black & Decker Inc.</u>, 643 F.3d 352, 357 n.2 (2d Cir. 2011).

Plaintiff disputes defendants' interpretation of the case law, claiming that defendants improperly assume that the complaint's alleged uncompensated work is not compensable.  See Pl. Opp. at 3-7.

### 1.  *Motion to Dismiss Standard*

On a Rule 12(b)(6) motion to dismiss, courts liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the non-moving party.  See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P., 737 F.3d 166, 176 (2d Cir. 2013) (citations omitted).  Courts do not, however, assume the truth of conclusions of law.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In this connection, courts engage in a two-step analysis.  See id. at 678-79 (discussing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).  First, a court must "identify . . . pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 679; see id. at 678 ("A pleading that [merely] offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting Twombly, 550 U.S. at 555)).  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.

A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678 (citing Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  In other words, this standard

does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The Supreme Court has invited courts, in assessing the sufficiency of pleadings, to use their "judicial experience and common sense." Iqbal, 556 U.S. at 679.

Whether an activity constitutes compensable work presents a mixed question of law and fact. See Leevson v. Aqualife USA, Inc., No. 14-CV-6905, 2017 WL 5048322, at *12 (E.D.N.Y. Nov. 1, 2017) (citing Holzapfel v. Town of Newburgh, N.Y., 145 F.3d 516, 522 (2d Cir. 1998)). Accordingly, the question here is whether, assuming the truth of the well-pled facts, plaintiff has plausibly alleged that his activities amount to compensable work. See generally Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63-69 (2d Cir. 2010) (holding, in a copyright infringement action, that it was not plausible that the purportedly infringing work was substantially similar to the purportedly infringed-upon work, a mixed question of law and fact).

### 2. *Plaintiff's Overtime Claims Are Well Pled*

The FLSA requires, for each hour worked in excess of 40 per week, compensation "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); see also N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. "[T]o state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013).

Here, plaintiff alleges in the complaint that he worked in excess of 40 hours per week without pay amounting to at least one and one-half times his regular rate. See, e.g., Compl.

¶ 60 ("Defendants failed to pay Plaintiff . . . overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided in the FLSA.").  Such allegations are conclusory, and, as such, the Court disregards them on defendants' motion to dismiss.  See DeJesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 89 (2d Cir. 2013) (holding that such pleadings are conclusory because they are but recitations of the statutory language); see also Iqbal, 556 U.S. at 678-79.

This conclusory assertion is, however, supported in the pleading by factual allegations. Plaintiff's primary job duty is to transport children between their homes and schools.  See, e.g., Compl. ¶¶ 11, 19.  In paragraph 33, plaintiff pleads that throughout his employment, he has worked and continues to work "between forty-seven and forty-nine (49) hours per week" (and sometimes more).  See, e.g., id. ¶ 33.  In paragraph 32, he sets forth the schedule that he typically works, which, when added up, amounts to between 45 hours and 50 minutes and 48 hours and 20 minutes of work per week, including up to 6 hours and 40 minutes of uncompensated travel time and up to 5 hours of uncompensated wait time.  See id. ¶ 32.[5]

To be sure, if this travel and wait time is not compensable, then plaintiff's allegation of unpaid overtime would not be well pled: with these hours omitted, paragraph 32 would plead approximately 36 hours of work, which is below the 40-hour threshold for overtime pay.  See Lundy, 711 F.3d at 114.  This travel and wait time is the only uncompensated work that plaintiff has pled.  See id. (requiring plaintiffs to plead some amount of uncompensated work). The dispositive question is thus whether plaintiff has sufficiently pled facts to support a

---

[5] The complaint alleges that plaintiff's workday ended either at "7:00 p.m. or 7:30 p.m."  Compl. ¶ 32.

8

plausible inference that his traveling and waiting in the middle of his split-shift workday is compensable work under the FLSA.

a. *Parking/Travel Time*[6]

For the reasons explained below, this Court concludes that the complaint plausibly alleges, in support of plaintiff's overtime claims, that plaintiff's mid-shift travel time is compensable.

In <u>Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123</u>, the Supreme Court defined compensable "work" as activity that involves "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." 321 U.S. 590, 598 (1944). Further, in the context of the PPA,[7] the Supreme Court has interpreted an employee's

---

[6] Defendants frame this activity as commuting, <u>see</u> Def. Mem. at 10-12, while plaintiff frames it as travel to a relief point, <u>see</u> Pl. Opp. at 17-19, 22-23. At least for purposes of this motion, it is undisputed that plaintiff parked the bus at his home. <u>See</u> Def. Mem. at 12 n.8; Def. Reply at 5 & n.2; Pl. Opp. at 22-23.

[7] The PPA is an amendment to the FLSA and acts as a limitation on liability for employers. <u>See</u> 29 U.S.C. § 251(a) (describing that the policy of the PPA is to refine the FLSA in light of its having been "interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities"). The arguably relevant provisions of the PPA, however, do not govern the facts at hand because the disputed work activities in this case occur during the workday, not before or after it. <u>See id.</u> § 254(a) (excluding from compensable work only those activities that "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities").

Contrary to plaintiff's assertions in his opposition papers, <u>see</u> Pl. Opp. at 17, defendants do not argue that the PPA applies to split-shift travel time, <u>see</u> Def. Mem. at 10 (noting in a parenthetical that "mid-shift travel time [is] not covered by the" PPA); <u>see also</u> Def. Reply at 4 n.1. Instead, defendants contend that the PPA exclusions are analogous to, and the principles underlying the PPA inform the disposition of, the facts at hand. <u>See</u> Def. Mem. at 10 (arguing that if ordinary commute time is not compensable under the PPA, mid-shift commute time likewise should not be compensable). Assuming plaintiff similarly intends his lengthy PPA analysis to be an argument by analogy, <u>see</u> Pl. Opp. at

9

"principal [work] activity" to mean an activity that is both "integral and indispensable" to his employment, which is compensable even if performed during an otherwise non-compensable commute.  See IBP, Inc. v. Alvarez, 546 U.S. 21, 37 (2005); 29 C.F.R. § 785.41 ("Any work which an employee is required to perform while traveling must, of course, be counted as hours worked.").  "Integral" means "essential to completeness" and "indispensable" means "necessary."  See Gorman v. Consol. Edison Corp., 488 F.3d 586, 592 (2d Cir. 2007).  An activity is thus "integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities."  Integrity Staffing Sols., Inc. v. Busk, 135 S.Ct. 513, 517 (2014).  "Sharpening the knife is integral to carving a carcass; powering up and testing an x-ray machine is integral to taking x-rays; and feeding, training and walking the dog is integral to the work of a K–9 officer[.]"  Gorman, 488 F.3d at 592 (internal citations omitted).  Ingress and egress at a nuclear power stations' security check points, although arguably indispensable, are not integral to the work of a nuclear power station employee.  See id. at 593.

A bus driver transporting his employer's bus to and from its parking site is an activity that is required of the driver—it is necessarily and primarily pursued to benefit the employer. See Meeks v. Nocco, No. 8:15-cv-1460-T-24 AEP, 2016 WL 4507841, at *4 (M.D. Fla. Aug. 29, 2016) (holding, in granting plaintiff partial summary judgment, that the plaintiff police officer's "travel time between the secure parking lot and his patrol zone is compensable,

---

17-23, this Court will not address that argument because, as discussed in this section, the Court finds that the complaint plausibly alleges that plaintiff's mid-shift travel is part of, not ancillary to, his employment's principal activities.

because the acts of retrieving and returning his patrol vehicle to and from the secure parking lot are part of his principal activities").  A bus driver must, as a matter of necessity, park his employer's bus somewhere at the conclusion of his shift and, similarly, take his employer's bus from its parking site to the location where he will begin transporting passengers at the commencement of his shift.  Cf. Lassen v. Hoyt Livery, Inc., 120 F.Supp.3d 165, 174-75 (D. Conn. 2015) (holding, in granting plaintiffs partial summary judgment, that a limousine driver's travel time from his home to pick up his first passenger was compensable because it was part of, not ancillary to, the driver's principal work activity; it was integral and indispensable to his job as a limousine driver and, thus, not a non-compensable ordinary commute).  Indeed, in this context, parking is as integral to a driver's operation of a bus as the sharpening of a butcher's knives is to carving, or the powering up of a doctor's x-ray machine is to the examination.  See Gorman, 488 F.3d at 592.  As such, a bus driver's parking and retrieval of his employer's bus can plausibly be claimed to be compensable work.

Here, plaintiff pleads that it takes him 40 minutes each way to transport defendants' bus between its parking site (at his home in the Bronx) and schools in New York City.  See Compl. ¶¶ 7, 32.  Mindful of the Supreme Court's teachings that courts should exercise common sense when evaluating plausibility, see Iqbal, 556 U.S. at 679; the Second Circuit's acknowledgment that the compensability of work-related activity is generally highly fact-dependent, cf. Kuebel v. Black & Decker Inc., 643 F.3d 352, 359 (2d Cir. 2011) (noting, on summary judgment, that whether an activity is integral and indispensable to an employee's principal work activities "is a fact-dependent inquiry"); and the realities of parking in New York City and driving between boroughs—particularly during midday weekdays in a school bus—this Court finds

11

that, for purposes of pleading, it is plausible that some or all of plaintiff's mid-shift travel is compensable work.

Defendants argue, without evidentiary support, that they do not require plaintiff to park at his home and that plaintiff could park by the school at which he picks up children.  See Def. Mem. at 11-12; id. at 12 n.8; but see Alcantar v. Hobart Serv., 800 F.3d 1047, 1055-56 (9th Cir. 2015) (district court held, on summary judgment under California labor law, that plaintiff's travel to and from home in defendant's truck was not compensable because, in part, plaintiff's employment contract purported to give him the ability to park at his employer's office; Ninth Circuit reversed, finding that there was a genuine dispute as to whether plaintiff's ability to park at his employer's office was illusory such that he had no choice but to park at his home).  Even assuming that defendants' factual assertions are accurate, they may not be considered on a motion to dismiss; at this point, the Court must assume the veracity of the complaint's factual allegations.  See Iqbal, 556 U.S. at 678.  The Court more appropriately considers defendants' arguments below on summary judgment.

> *b.  Pick-Up Waiting Time*

Similarly, the complaint plausibly alleges, in support of plaintiff's overtime claims, that plaintiff's waiting for children in the afternoon is compensable work.

Under certain circumstances, an activity may be compensable work despite the lack of exertion on the employee's part because "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen."  Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944); see Skidmore v. Swift & Co., 323 U.S. 134, 137 (1944) ("Facts may show that the employee was engaged to wait, or they [m]ay show that he waited to be

engaged.").  The question posed in this context is whether the "time is spent predominantly for the employer's benefit or for the employee's[, which] is a question dependent upon all the circumstances of the case."  Armour & Co., 323 U.S. at 133.  Department of Labor regulations provide guidance on applying the "engaged to wait" versus "waiting to be engaged" distinction.  If a period of inactivity is "unpredictable" and "of short duration" such that the employee "is unable to use the time effectively for his own purposes[,]" then the employee is "engaged to wait," and the inactive time constitutes "worktime" under the FLSA. 29 C.F.R. § 785.15.  In contrast, if the period of inactivity is predictable and "long enough to enable him to use the time effectively for his own purposes[,]" then the employee is "waiting to be engaged[,]" and the inactive time is not "working time" under the FLSA.  Id. §§ 785.16(a)-(b).

Here, plaintiff pleads that he "wait[s] to pick-up [a] second set of children from school" for one hour each workday.  Compl. ¶ 32.  Given that plaintiff's primary job duty is to pick up school children and transport them to and from school, see, e.g., Compl. ¶¶ 11, 19, it is plausible that plaintiff is "engaged to wait" as opposed to "waiting to be engaged," see 29 C.F.R. § 785.16(b) ("A truck driver who has to wait at or near the job site for goods to be loaded is working during the loading period. If the driver reaches his destination and while awaiting the return trip is required to take care of his employer's property, he is also working while waiting. In both cases the employee is engaged to wait.").[8]

---

[8] Indeed, in his declaration in opposition to defendants' motion for summary judgment, plaintiff supplements the pleading's factual allegations, explaining that he was required to "remain with the bus at all times" and "was expressly instructed to proceed directly to Project Read and wait for the students to be dismissed."  Pl. Decl. ¶¶ 16, 29.

In sum, taken in the light most favorable to plaintiff, this Court concludes that it is plausible, as per the facts alleged in the complaint, that plaintiff's mid-workday travel and waiting constitute compensable work for purposes of stating an overtime claim under the FLSA. Accordingly, the Court recommends that defendants' motion to dismiss plaintiff's overtime claim be denied.

### 3. Defendants' Challenge to the Pleading's Reference to a "Typical" Workweek Misinterprets FLSA Jurisprudence

Defendants argue that, because the complaint describes plaintiff's workweek schedule as one that is "typical," plaintiff's complaint fails to adequately plead a claim for overtime. See Def. Mem. at 9-10. In support of their contention that pleading a "typical" workday schedule is legally inadequate, see id. at 10, defendants rely on Judge Irizarry's opinion in Burns v. Haven Manor Health Care Ctr., LLC, No. 13-CV-5610 (DLI)(CLP), 2015 WL 1034881, at *2 (E.D.N.Y. Mar. 10, 2015), which discusses the Second Circuit's opinion in Lundy, 711 F.3d at 113–14.

Defendants misinterpret the FLSA pleading jurisprudence and, in the process, argue an unnecessarily formalistic pleading principle, which wholly condemns reference to the employee's "typical" work schedule in a complaint. Contrary to defendants' argument, the Second Circuit in Lundy did not hold that the mere mention of a "typical" workweek schedule transforms an otherwise valid pleading into an invalid one. See 711 F.3d at 113–14.[9] The

---

[9] Indeed, the Second Circuit in Lundy encouraged the use of such approximations in pleadings. See 711 F.3d at 114 n.7; accord DeJesus, 726 F.3d at 88; see also Burns, 2015 WL 1034881, at *5 ("Courts have granted some leeway in cases in which the plaintiffs allege that they were scheduled to work forty or more hours per week and allege that time keeping practices 'regularly,' 'typically' or 'consistently' resulted in additional uncompensated work . . . .") (collecting cases).

issue in Lundy was whether the plaintiffs had pled any week during which they worked 40 hours plus some amount of inadequately compensated overtime.  See id.  For example, the complaint alleged that Wolman, one of the plaintiffs, "typically" worked 37 hours and 30 minutes per week but that she sometimes worked up to 50 hours per week.  See id. at 114. The pleading failed to allege, however, that Wolman was not adequately paid overtime for those "atypical" weeks.  See id. at 114-15.  Instead, according to the complaint in Lundy, during some unidentified weeks, Wolman worked 2 hours and 15 minutes without compensation.  See id. at 115.  The Second Circuit took issue with this pleading because the court would have to speculate whether the alleged uncompensated work took place during the "typical" 37.5-hour workweek (during which the uncompensated 2 hours and 15 minutes would not constitute overtime) or during the "atypical" 50-hour workweek (during which such uncompensated time would constitute overtime).  See id.  This same pleading inadequacy, and the speculation attendant thereto, fueled the Second Circuit's dismissal of the other two plaintiffs' overtime claims in Lundy, see 711 F.3d at 114, as well as Judge Irizarry's dismissal of similarly pled claims in Burns, see 2015 WL 1034881, at *3-5.

In other words, in both of those cases, "[p]laintiffs [did] not allege[] a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours."  Lundy, 711 F.3d at 114.  Here, in contrast, plaintiff pleads that he works approximately 48 hours per week.[10]  See Compl. ¶¶ 32-33.  Further, plaintiff pleads that, of

---

[10] Specifically, in paragraph 33, plaintiff pleads that he typically works between 47 and 49 hours per week, which, although not precisely identical, is not materially inconsistent with paragraph 32's work-schedule totaling between 45 hours and 50 minutes and 48 hours and 20 minutes per week.  See Compl. ¶¶ 32-33.

those hours, he has worked either 5 hours or 11 hours and 40 minutes, depending on the week, without compensation.  See id. ¶ 32 (alleging that defendants would occasionally compensate plaintiff for his mid-shift travel time in the bus).  Assuming these allegations to be true, as required on a motion to dismiss, the Court need not engage in any degree of speculation.  The reasonable inference—indeed, the only inference—is that there was at least one week in which plaintiff worked 40 hours in addition to at least 5 hours of uncompensated work.  That some weeks included even more uncompensated overtime is not fatal; nor is it fatal that there may be some atypical workweeks in which plaintiff accrued no overtime.  See Lundy, 711 F.3d at 113–14.

Having concluded that defendants' motion to dismiss the overtime claims should be denied, the Court next discusses whether a conversion to summary judgment is proper and, if so, whether that motion should be granted.  This Court answers both questions in the negative.

### B.  Summary Judgment

Defendants request that the Court consider plaintiff's trip cards, which, they argue, reflect that plaintiff did not in fact work in excess of 40 hours per week.  See Def. Mem. at 14.  Because the source of this factual material is outside the complaint, defendants request that the Court convert their motion to dismiss to one for summary judgment.  See id. (requesting the Court to "exercise the procedures provided under Fed. R. Civ. P. 12(d)").  Plaintiff counters that such conversion to, and disposition of, summary judgment is improper because the trip cards are not dispositive of the overtime dispute at hand and "no discovery has taken place[.]"  See Pl. Opp. at 10-12.

### 1. Conversion Is Improper

"Federal courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment[.]"  Stephens v. Bayview Nursing & Rehab. Ctr., No. 07-CV-0596 (JFB)(AKT) 2008 WL 728896, at *2 (E.D.N.Y. Mar. 17, 2008) (collecting cases).  "'[T]his discretion generally will be exercised on the basis of the district court's determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.'"  Id. (collecting cases).  If a court does convert a motion to dismiss to one for summary judgment, it must ensure that the non-moving party had adequate notice and an opportunity to respond to the conversion.  See Fed. R. Civ. P. 12(d); Laporte v. Fisher, No. 11 Civ. 9458(PKC)(HBP), 2012 WL 5278543, at *5 (S.D.N.Y. Oct. 24, 2012) (quoting Hernandez v. Coffey, 582 F.3d 303, 307 (2d Cir. 2009)).

Here, although defendants gave plaintiff adequate notice via their motion papers, see Def. Mem. at 14, and plaintiff responded in his opposition, see Pl. Opp. at 10-12, conversion of the motion to one for summary judgment is nevertheless improper at this stage of the litigation, for two reasons.  First, the issues currently in dispute (whether plaintiff's mid-shift travel and waiting constitute compensable work) are highly fact-dependent.  Cf. Kuebel, 643 F.3d at 359.  The trip cards proffered by defendants as evidence are subject to differing interpretations, compare Def. Mem. at 5-7, 14, and Def. Reply at 5-6, with Pl. Opp. at 16-17, 20-21, and are not dispositive of the disputed issue.  Specifically, defendants present the Court

17

with trip cards that detail (and largely corroborate) plaintiff's daily work schedule.  See Def. Mem. at 14; see generally Motion to Dismiss, Exhibit A to Termini Declaration ("Trip Cards"), DE #14-3.  For example, the most recent, complete trip card is for June 2, 2017. See Trip Cards at 146-47.  On this card, plaintiff noted that he started his first shift at 5:00 a.m., dropped off the last round of children at school at 8:48 a.m., and concluded his morning shift at 9:40 a.m., see id., which, as plaintiff avers in his declaration, was when he would arrive home in the bus, see Pl. Decl. ¶ 22.  In contrast, defendants interpret this card to reflect that plaintiff worked 3 hours and 48 minutes (from 5:00 a.m. until 8:48 a.m.) during this morning shift, not 4 hours and 40 minutes (from 5:00 a.m. until 9:40 a.m.).  See Trip Cards at 146; Motion to Dismiss, Exhibit A to Pollack Declaration at 8, DE #14-5.  The compensability of plaintiff's activity is not informed by the trip card.  All that this card and others show is that there are periods of time during the morning shift that may or may not be compensable.[11]

The Court's adjudication of defendants' pre-answer motion for summary judgment is complicated for a second reason.  Defendants failed to submit a statement of undisputed facts as required by Local Civil Rule 56.1.  This failure limits the Court's ability to efficiently adjudicate the issues on the pending motion.  See Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001); Chiarelli v. Nissan N. Am., 14-CV-4327 (NGG) (PK), 2017 WL 2982974, at *2 (E.D.N.Y. July 12, 2017) (denying summary judgment motion without prejudice:

---

[11] The facts are further muddied by the addition of another school to plaintiff's schedule in about February 2017, see Pl. Decl. ¶ 18; according to the Trip Cards, plaintiff then was assigned to schools with divergent dismissal times (e.g., 12:00 p.m. and 4:00 p.m., respectively), see, e.g., Trip Cards at 146.

"Without a Rule 56.1 Statement from Defendant (and a response from Plaintiffs), the court cannot adequately assess whether there exist any genuine issues of material fact, which would preclude entry of summary judgment in favor of Defendant.") (collecting cases).  In light of the early stage of this litigation, as well as the highly fact-dependent nature of the issues in dispute, this omission warrants a denial of defendants' motion for summary judgment without even reaching the merits, see Chiarelli, 2017 WL 2982974, at *2; S.D.N.Y./E.D.N.Y. Local Civ. R. 56.1(a) ("Failure to submit such a statement may constitute grounds for denial of the motion") -- and reinforces the conclusion that conversion of the motion is improper, see Stephens, 2008 WL 728896, at *2 (noting that conversion is in part dependent upon whether the ultimate summary judgment motion "is likely to facilitate the disposition of the action"); see also Arena v. Delux Transp. Servs., Inc., No. CV 12-1718, 2013 WL 654418, at *3 (E.D.N.Y. Feb. 15, 2013).

### 2.  Summary Judgment Should Be Denied Without Prejudice

In the event the District Court decides to convert defendants' motion, this Court recommends that it deny defendants' motion for summary judgment without prejudice, pending the close of fact discovery.  As discussed above, the only apparent dispute regarding plaintiff's overtime claim is whether plaintiff's midday traveling and waiting constitute compensable activity under the FLSA.

### a.  Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986).

19

The Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [factual dispute] for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Summary judgment is inappropriate if, resolving all ambiguities and drawing all logical inferences against the moving party, there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.  A factual dispute is genuine if it "may reasonably be resolved in favor of either party." Id. at 250.  A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Id. at 248.

A "defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial." Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001).  A defendant "need only point to an absence of proof on plaintiff's part[.]" Id.  The nonmoving plaintiff must then "designate specific facts showing that there is a genuine [dispute] for trial." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)) (internal quotation marks omitted).  To defeat a motion for summary judgment, the nonmoving plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  Rather, the nonmoving plaintiff "must present concrete particulars and cannot succeed with purely conclusory allegations." Fitch v. R.J. Reynolds Tobacco Co., 675 F.Supp. 133, 136 (S.D.N.Y. 1987) (internal quotations omitted).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50. (citations omitted).  A plaintiff must thus proffer some evidentiary basis on which to believe that his "version of relevant

events is not fanciful." Christian Dior–New York, Inc. v. Koret, Inc., 792 F.2d 34, 38 (2d

Cir. 1986) (internal quotations omitted).

### b. Parking/Travel Time

Citing United Transportation. Union Local 1745 v. City of Albuquerque, 178 F.3d

1109, 1118–20 (10th Cir. 1999), plaintiff argues that the entire time he spends traveling to and

from home and school during the middle of his split-shift workday is compensable because he

is traveling to and from a "relief point." See Pl. Opp. at 17-19. Defendants contend that none

of this time is compensable because it is effectively commuting time, and the fact that plaintiff

"commutes" in defendants' vehicle is not dispositive. See Def. Mem. at 10-12. Neither

extreme position is persuasive.

The compensability of plaintiff's midday travel between school and his home (where he

parks defendants' bus) presents a challenging issue, because both the employer and the

employee are substantially benefited by that activity. Plaintiff is benefited in that he travels to

and from his own residence. Plaintiff does so in his employer's vehicle while presumably, as

defendants argue (without evidentiary support), avoiding transportation costs (such as for gas,

wear-and-tear on his personal car, and/or public transportation). See id. at 12 (noting that

"Hoyt incurs the costs of fuel and vehicle wear-and-tear"). Defendants likewise are benefited:

their bus is parked, an integral and indispensable aspect of plaintiff's employment. See supra

pp. 10-12. Moreover, as plaintiff argues (also without evidentiary support), defendants

presumably avoid the cost of paying for a location in Manhattan at which to park the bus. See

Pl. Opp. at 23.

When presented with wage-and-hour compensability issues, the Second Circuit has utilized the predominant-benefit test.  See Singh v. City of New York, 524 F.3d 361, 366–70 (2d Cir. 2008) (discussing and applying the test to determine that carrying a briefcase containing inspection documents "does not transform [the employees'] otherwise non-compensable commute into compensable time").  The question here is whether plaintiff's mid-shift travel is predominantly for the benefit of defendants.  See generally id.

The time it would take for a driver to park a bus at the closest employer-approved location is predominantly spent to benefit the employer; any additional time spent driving to park the bus benefits the employee more than it benefits the employer.  See Adams v. Sch. Bd. of Hanover Cty., Civil Action No. 3:05CV310, 2008 WL 5070454, at *10 (E.D. Va. Nov. 26, 2008) ("If a driver chooses to park at home rather than at a place closer to the school, [d]efendant rightly questions whether any additional parking time can be considered compensable, rather than merely commuting time. While defendant offers testimony about what 'many' drivers do, their proffer cannot sustain a finding on summary judgment.").  Here, plaintiff proffers evidence that defendants permitted him to park their bus at his home.  See Pl. Decl. ¶ 9 ("When I was hired, the defendants informed me that I was permitted to drive the bus back home after my morning drop-off was concluded while I waited for my afternoon shift to begin.").  Defendants proffer no evidence, and the record does not otherwise support, that plaintiff was authorized to park the bus at any location other than his home.[12]  Based on the

---

[12] The record is silent as to whether, in the middle of the day, plaintiff could park defendants' bus at their lot in the Bronx (see Compl. ¶ 32) and, if so, whether the time spent traveling to and from that location would have been less than plaintiff spent traveling to and from his home.  Similarly, although defendants argue, in a footnote, that plaintiff could have parked their bus adjacent to the school at which he dropped off students, see Def. Mem. at 12 n.8 ("Plaintiff was free to simply park his bus near

existing record, a jury could thus reasonably find that plaintiff's home is the closest defendant-approved parking location, such that his midday travel to and from home is compensable work. Once the record is sufficiently developed, through discovery, a more fact-specific determination can be made as to whether some or all of that travel time is compensable.  See generally United Transp. Union Local 1745, 178 F.3d at 1120 (affirming grant of summary judgment to city bus drivers for compensation for time spent traveling on shuttles to and from relief points at the beginning and end of their split shifts: "The mere fact that the split shift period is not compensable . . . does not mean that all activity related to that period, including any associated travel, should be treated the same."); accord Gilmer v. Alameda-Contra Costa Transit Dist., No. C 08-05186 CW, 2010 WL 289299, at *8 (N.D. Cal. Jan. 15, 2010) (granting summary judgment to bus drivers for split-shift travel time); see also Local 589, Amalgamated Transit Union v. Mass. Bay Transp. Auth., 94 F.Supp.3d 47, 59 (D. Mass. 2015) (denying cross-motions for summary judgment on split-shift travel time for transit employees, on account of "significant gaps" in the record regarding plaintiffs' travel time and break schedule, as well as information related to defendant's "custom and practice").

### c.  Pick-Up Waiting Time

As discussed above, whether a period of employee inactivity is considered compensable depends upon whether the "time is spent predominantly for the employer's benefit or for the employee's[, which] is a question dependent upon all the circumstances of the case."  Armour

---

the school if he chose to do so."), this factual assertion is unsupported by any evidence and thus should be disregarded on summary judgment, see Fed. R. Civ. P. 56(c)(3), 56(e); see also Alcantar, 800 F.3d at 1055-56 (holding that there was a genuine dispute whether plaintiff's ability to park at his employer's office was illusory such that he had no choice but to park at his home).

& Co., 323 U.S. at 133.  If a period of inactivity is "unpredictable" and "of short duration" such that the employee "is unable to use the time effectively for his own purposes," then the employee is "engaged to wait," and the inactive time constitutes "work" under the FLSA.  29 C.F.R. § 785.15.  "A truck driver who has to wait at or near the job site for goods to be loaded is working during the loading period."  Id. § 785.16(b).  "If the driver reaches his destination and[,] while awaiting the return trip[,] is required to take care of his employer's property, he is also working while waiting."  Id.  "In both cases the employee is engaged to wait."  Id.

Here, plaintiff proffers evidence that defendants expressly require him, after completing afternoon drop-offs of the students at their homes, to proceed directly to Project Read and wait for the students to be dismissed.  See, e.g., Pl. Decl. ¶¶ 14, 16, 29.  Defendants fail to proffer any contrary evidence—only the bare assertion that they receive no benefit from plaintiff's waiting.  See Def. Mem. at 12; Def. Reply at 6-7.  Thus, although plaintiff has a predictable one-hour waiting period each workday, see Pl. Aff. ¶ 16; 29 C.F.R. § 785.16(a) (predictability weighs against inactivity being considered work), under the totality of the circumstances, a jury could reasonably find that, given defendants' instruction and plaintiff's obligation to safeguard the bus, he has no meaningful opportunity "to use [this] time effectively for his own purposes[,]" 29 C.F.R. § 785.15, and that therefore his Project Read pick-up waiting time is compensable, see generally Lassen, 120 F.Supp.3d at 176-77 (where evidence established that limousine drivers were "significantly constrained in how [they could] use [their] waiting time," such periods were compensable).

24

Accordingly, because this Court concludes that plaintiff has met his burden in defeating defendants' motion for summary judgment with respect to the overtime claims, it recommends that defendants' motion be denied.  Further, because defendants moved for summary judgment prior to answering the complaint—let alone engaging in any discovery—this Court recommends that the denial be entered without prejudice, pending the close of fact discovery.  See Laporte, 2012 WL 5278543, at *7 (denying defendant's converted motion for summary judgment without prejudice pending the close of fact discovery).

## II.   Plaintiff's Spread-of-Hours Claim Should Be Dismissed With Prejudice

Plaintiff alleges that he is owed spread-of-hours pay pursuant to the NYLL.  See, e.g., Compl. ¶ 4.  Under New York law, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.

The parties dispute the meaning of the phrase "in addition to the minimum wage required in this Part[.]"  See Def. Mem. at 14; Pl. Opp. at 24-25.  A few courts have interpreted this phrase to mean that an employee must be paid the spread-of-hours premium even if the employee's regular rate exceeds the minimum wage.  See, e.g., Doo Nam Yang v. ACBL Corp., 427 F.Supp.2d 327, 339–40 (S.D.N.Y. 2005).  In contrast, other courts, citing an opinion letter of the New York State Department of Labor, have interpreted this phrase to be conditional language, such that an employee is entitled to spread-of-hours pay if, and only if, the employee earns at or below the minimum wage (i.e., spread-of-hours pay is due only "in addition to the minimum wage" that is otherwise owed).  See, e.g., Ellis v. Common

25

Wealth Worldwide [Chauffeured] Transp. of NY, LLC, No. 10-CV-1741 (DLI)(JO), 2012

WL 1004848, at *8 (E.D.N.Y. Mar. 23, 2012) (Irizarry, C.J.).

 This Court need not grapple with the admittedly ill-drafted statutory language.  To the

extent that there continues to be a split in authority on the issue, judges in this District have in

recent years coalesced behind the latter, conditional interpretation.  See Juarez-Cardoso v. La

Flor de Santa Ines, Inc., No. 15 Civ. 6671 (VMS), 2017 WL 4357009, at *13 (E.D.N.Y.

Sept. 29, 2017) ("The NYLL also contains a 'spread-of-hours' provision which allows a

plaintiff who is paid minimum wage to recover an extra hour's worth of pay at the minimum

wage for each day that an employee works in excess of ten hours."); Miguel v. Mi Bella

Puebla Corp., No. 16-CV-01593 (SJ)(RER), 2017 WL 4838820, at *5 (E.D.N.Y. Sept. 6,

2017) ("Spread of hours wages are derivative of minimum wage claims and generally cannot

be asserted by employees earning more than minimum wage.") (citing Sosnowy v. A. Perri

Farms, Inc., 764 F.Supp.2d 457, 473-74 (E.D.N.Y. 2011)), report and recommendation

adopted, 2017 WL 4838761 (E.D.N.Y. Oct. 24, 2017); Gonzalez v. ERBA, Inc., No. 15-CV-

6037 (ADS)(AYS), 2017 WL 4118389, at *5 (E.D.N.Y. Aug. 30, 2017) ("'In accordance

with the clear weight of authority in this District ruling on the issue, employees who earn in

excess of the minimum wage are not entitled to a spread-of-hours compensation.'" (collecting

cases)), report and recommendation adopted, 2017 WL 4122615 (E.D.N.Y. Sept. 15, 2017);

Landi v. 341 Hancock LLC, No. 16-cv-2655 (ERK) (PK), 2017 WL 2804928, at *1

(E.D.N.Y. June 27, 2017) ("Following guidance from the New York Department of Labor,

'the majority rule in the Eastern and Southern Districts appears to be that employees who earn

more than the minimum wage are not entitled to spread-of-hours compensation.'") (quoting

Ramos v. Telgian Corp., 176 F.Supp.3d 181, 202 (E.D.N.Y. 2016)); Qiu Hua Tan v. Voyage Express Inc., 15 CV 6202 (RJD) (RML), 2017 WL 2334969, at *3 (E.D.N.Y. May 25, 2017) ("Although plaintiffs assert that they worked shifts in excess of ten hours, the weight of authority in this Circuit holds that '[a] limitation upon a plaintiff's eligibility to recover for spread-of-hours pay is that the plaintiff not earn more than the minimum wage.'" (collecting cases)); Leon v. Zita Chen, No. 16-CV-480(KAM)(PK), 2017 WL 1184149, at *7 (E.D.N.Y. Mar. 29, 2017) ("Courts, however, have given deference to the New York State Department of Labor's interpretation that spread-of-hours does not apply to an employee whose workday is in excess of ten hours if his or her total daily compensation exceeds the New York State minimum wage multiplied by the number of hours he or she worked plus one additional hour at the minimum wage." (collecting cases)); Bedasie v. Mr. Z Towing, Inc., 13 CV 5453 (CLP), 2017 WL 1135727, at *38 (E.D.N.Y. Mar. 24, 2017) ("Most courts in this circuit have ruled that New York's spread-of-hours provision applies only to employees who earn minimum wage.") (citing Guaman v. J & C Top Fashion, Inc., No. 14 Civ. 8143 (GBD) (GWG), 2016 WL 791230, at *5 (S.D.N.Y. Feb. 22, 2016)), appeal withdrawn, No. 17-2922, 2017 WL 6520477 (2d Cir. Dec. 4, 2017); Mumin v. Uber Techs., Inc., 239 F.Supp.3d 507, 533 n.17 (E.D.N.Y. 2017) ("The court agrees that the statute makes these claims derivative of minimum wage claims, and dismisses the spread of hours claim on the same basis as Ortega's minimum wage claim."), reconsideration denied sub nom. Ortega v. Uber Techs. Inc., 2017 WL 1737636 (E.D.N.Y. May 2, 2017); Luna v. Gon Way Constr., Inc., 2017 WL 835321, at *11 (E.D.N.Y. Feb. 14, 2017) ("A limitation upon a plaintiff's eligibility to recover for spread-of-hours pay is that the plaintiff not earn more than the minimum wage.") (citing Guadalupe v.

27

Tri-State Emp't Mgmt. & Consulting, Inc., No. 10-cv-3840 (NG)(CLP), 2013 WL 4547242, at *12-13 (E.D.N.Y. Aug. 28, 2013)), report and recommendation adopted, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017).  Plaintiff does not now argue that there has been a material change in the relevant case law to question this District's – and Judge Irizarry's – stance on the matter. See Pl. Opp. at 24-45.

Here, plaintiff neither alleges nor argues that he is owed minimum wage.  See id.; compare Compl. ¶ 33 (alleging plaintiff earns $17.67 per hour), and id. ¶ 11 (alleging defendants employ over 200 drivers), with N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1(a)(1)(i) (2016) (setting the minimum wage rate in New York City for large employers at $11 per hour in 2017), and id. (defining "[l]arge employers" as those that employ "eleven or more employees").  This Court accordingly recommends that the District Court grant defendants' motion to dismiss plaintiff's NYLL spread-of-hours claim with prejudice.

### III.    The Court Should Retain Jurisdiction Over Plaintiff's Recordkeeping Claims

Despite their diverging conclusions, the parties do not in fact dispute the applicable analysis on whether the Court should retain jurisdiction over the remaining state law recordkeeping claims.  See Def. Reply at 7 (noting the lack of dispute).  If the District Court adopts plaintiff's position and declines to dismiss the federal overtime claim, then it should retain jurisdiction over the state recordkeeping claims.  See Pl. Opp. at 25.  Otherwise, as defendants argue, it should dismiss those claims.  See Def. Mem. at 14-15.  Because this Court recommends that the District Court not dismiss the FLSA overtime claim, see supra pp. 7-25, it likewise recommends retaining jurisdiction over the WTPA recordkeeping claims.

**IV.     Plaintiff's Motion for Leave to Amend Should Be Denied Without Prejudice**

In plaintiff's opposition, he requests that the Court grant him leave to amend the complaint.  See Pl. Opp. at 10 n.4.  Unlike the typical request for leave to amend in response to a defendant's motion to dismiss pursuant to Rule 12(b)(6), plaintiff's request is not dependent upon the Court's finding that he failed to state a claim for which relief may be granted, see Pl. Opp. at 10 n.4.  Instead, plaintiff requests leave to amend to (1) more accurately plead facts so as conform with plaintiff's affidavit—none of which has a material bearing on defendants' pending Rule 12(b)(6) motion—and (2) add additional claims against defendants.  See id.

As the existing pleading (with one limited exception) is sufficient to withstand defendants' motion, this Court recommends that plaintiff's motion to amend be denied without prejudice.  By embedding an independent motion to amend within his papers opposing defendants' dispositive motions, plaintiff directed his motion to Chief Judge Irizarry in violation of Rule III(A)(2) of her Individual Rules, which requires that such applications be directed to the undersigned magistrate judge.  If, after the District Court rules on defendants' motions, plaintiff still wishes to amend, he should confer with defendants pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure and Rule 37.3(a) of the Local Civil Rules before making an application to this magistrate judge.[13]

---

[13] Plaintiff's request is puzzling for a final reason.  On the day that plaintiff requested leave to amend, he could have amended the complaint as a matter of course.  Specifically, Rule 15 permits a party to

> amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

29

## CONCLUSION

For the foregoing reasons, this Court recommends that the District Court grant defendants' motion to dismiss with respect to plaintiff's NYLL spread-of-hours claim; deny defendants' motions to dismiss plaintiff's overtime and WTPA recordkeeping claims; deny without prejudice defendants' motion for summary judgment with respect to the overtime claims, as well as plaintiff's motion for leave to amend.

Any objections to this Report and Recommendation must be filed with the Honorable Dora L. Irizarry on or before **February 14, 2018**.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72.

**SO ORDERED.**

**Dated:**　**Brooklyn, New York**
　　　　　**January 31, 2018**

　　　　　　　　　　　　　/s/　　**Roanne L. Mann**
　　　　　　　　　　　　　**ROANNE L. MANN**
　　　　　　　　　　　　　**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

Fed. R. Civ. P. 15(a)(1).  Plaintiff's complaint is a pleading "to which a responsive pleading is required[.]"  Id.; see Fed. R. Civ. P. 7(a)(1), 12(a)(1)(A).  Further, in lieu of filing an answer to plaintiff's complaint, which would have been a responsive pleading for which service would be required, see Fed. R. Civ. P. 7(a)(2), 12(a)(1)(A), defendants moved "under Rule 12(b)," Fed. R. Civ. P. 15(a)(1)(B).  Accordingly, plaintiff had the right to amend his complaint as a matter of course "21 days after service of" defendants' August 18, 2017 motion papers, Fed. R. Civ. P. 15(a)(1)(B); see Def. Mem., or by September 8, 2017, the day after plaintiff requested leave to amend, see Pl. Opp.